This case on our docket is Heeple v. Clifford Baker, 5-11-492. May it please the court, my name is Amanda Horner from the Office of the State Appellate Defender and today I represent Mr. Clifford Baker. At the beginning, Mr. Baker would like to note that the state has conceded two issues. First, that this case must be remanded for a new sentencing hearing pursuant to Miller v. Alabama. And two, it must also be remanded where the circuit court can vacate one of the home invasion charges related to the Krijeska. The State Attorney agrees to that? Yes, they have conceded both of those, yes, Your Honor. Unless this court has any questions, Clifford will therefore confine his oral argument to two issues. First, whether the trial court erroneously admitted his confession where it was not voluntarily made. And two, whether the trial court had jurisdiction over the Krijeska home invasion count, the final count that will not be vacated, where it was filed in the trial court instead of the juvenile court. Your Honor, Clifford Baker was a troubled 15-year-old child. Two weeks before this offense occurred, he had attempted suicide and while he was hospitalized for a period of time, he was diagnosed as having major depressive disorder. He was prescribed Cymbalta, which everyone agrees was against the black box warnings because it may increase suicide as well as, and there was some debate about this, but as well as violent behavior. It is not clear whether Clifford or his family was ever warned about this. The doctor testified that he handed Clifford or that Clifford was given a 28-page document, but what discussion took place regarding that document is unclear. And again, Clifford was 15 years old. Once he started taking Cymbalta, Clifford began having bad dreams of violence and suicide and his parents did not continue to monitor his health. They did not meet his doctor's appointments, nor did the doctors follow up, even though he was being given medicine that was, again, not meant to be prescribed for children. On the night of the offense, Clifford had taken at least six Cymbalta tablets. He was also intoxicated with alcohol and THC. With those facts in mind, Your Honor, Clifford submits that his confession following the events of the night in question was not voluntary and the trial court's finding that it was was against the manifest weight of the evidence. Further, because this error is of a constitutional magnitude and it was also preserved, the State must prove that it was harmless beyond a reasonable doubt pursuant to Chapman v. California. Your Honor, I would submit to you that the confession video speaks for itself. It is important to note, however, that at the time the video was taken, Clifford was again 15 years old. He also had an eighth grade education and an IQ of 85. He was without a parent or a guardian, and though there were two juvenile officers present, what he was told about their role is unclear. He was handcuffed to a bed while multiple officers surrounded him in a small room. He was intoxicated on numerous substances, and the police were aware that he was intoxicated on these substances. He was so out of it during the video that he had trouble telling the police officers his name. He had just undergone multiple painful medical procedures, including a catheterization that the juvenile officers testified made him scream and beg for them to stop. He had been tasered by police and was suffering from those side effects. And perhaps the most striking portion of the confession was that the police had to continually wake him up in order to speak with him. And all three police officers that were present that day testified accordingly. One of them noted that he was drowsy. Another officer noted that Clifford went in and out of consciousness while this questioning took place. And one officer noted that he was not completely coherent. Now, the court found that there was no evidence of physical or mental abuse, threats, or promises. And that when they considered the evidence, it overwhelmingly established that the defendant's statements remained freely, voluntarily, and without compulsion. However, this is against the manifest way of the evidence because for confession to be freely given, I'm sorry, for it to be voluntary, it must be freely, voluntarily, and without compulsion or inducement of any sort. Further, because Clifford was only 15, whether or not this is voluntary is judged under a heightened standard because juveniles, as both the United States Supreme Court and the Illinois Supreme Court have made clear, are more easily coerced, suggested, have less knowledge of their rights, and they may not realize that they can walk away from a situation in the same way that an adult can. Now, the Illinois Supreme Court has noted a number of factors to consider in determining whether or not a confession, especially one made by a juvenile, is voluntary. First, we're to look at their age. Again, he was 15. He had an 8th grade education. We're also supposed to look at their lack of criminal experience. And here, the only prior criminal experience that Clifford had had was when police questioned him two weeks earlier following his attempted suicide. In other words, Clifford had never been interrogated by police before. He'd never been given Miranda warnings before. Further, we also have to consider his intelligence, which has to include his mental status at the time that this confession was taken. Again, he had an 8th grade education and an IQ of 85, but he also had been diagnosed with major depressive disorder, and in the two weeks prior to this incident, he'd been having nightmares. He was not sleeping well. But also, he was on medication because of this depressive disorder that was affecting his mood, and there were multiple people there who testified to this, Your Honors. We also have to consider the circumstances of the interrogation. He was in a small room where he was, again, intoxicated on a number of substances, and handcuffed on both sides to a hospital bed where he had also been forced to undergo medical procedures. He was so out of it that when you watch the video, you'll note that the police have to keep saying, Clifford, come on, Clifford, you've got to stay with me here. Stay with me here, Clifford. And they have to keep waking him up in order to complete the interrogation. Finally, there was no concerned adult present where Clifford would have been able to have talked to that, and the trial court made a special note that nothing prevented Clifford from requesting to speak with an adult. But first, in situations like the one Clifford was in, police had to wake him up in order to even have a conversation with him, so there was no time in which he could have said, hey, I want to talk to mom or dad or whatever. It's also important to note that given his mental state at the time, he would not have known that he could have spoken with his parents and been able to make that request. When you compare the factors that the Illinois Supreme Court has said must be considered when dealing with the juvenile, with the confession itself, it becomes clear that this was not voluntary. This is a child who was out of it. He was not someone who was familiar with the criminal justice system. I believe as common as I'm familiar with the Miranda rights because of TV. So his knowledge of the criminal justice system is limited to what he's watched on television, Your Honors. This is not someone that has multiple prior juvenile adjudications. We also have to consider that he had been through a taser and all of these medical procedures combined with his mental status at the time. And again, his defense was that he was involuntarily intoxicated to conclude that this was not a voluntary confession, Your Honor. Further, because this error was preserved, and this state bears the burden of showing that it was harmless beyond a reasonable doubt, pursuant to Chapman v. California, any time a constitutional violation occurs and it is preserved, that is the standard. But it's important to note that confessions are particularly harmful to defendants. And in almost all circumstances, they should be considered to be harmful. Because watching the defendant discuss what he says occurred that night again, you know, some of the facts that he gives are not completely accurate. So we're not even sure if what he says is accurate. When we watch that, when a jury hears that, it's very harmful for the defendant. Did the defendant talk to the jury? He did not, Your Honor. He did not take the stand. So the only words that the jury hears from Clifford are those that they hear in this video. Because this confession was not voluntary. Did his attorney want him to talk? That's not clear from the record. Certainly, Clifford was admonished that he had a right to take the stand, and he did not do so. He declined that right. But private conversations were had. Obviously, it's not on the record. But, again, the only words that the jury heard was this confession video from Clifford. Once you watch the video, I think it's striking to note that just the physical condition of Clifford alone probably made this an involuntary confession. I'm sorry. Did his attorney want him to have a testimony? Did the defendant's attorney want him to testify? I'm not sure, Your Honor. The record's just, like I said, it's unclear. He was admonished that he had the right to testify. He did not take the stand. I'm sure there was some conversations that probably occurred between the attorney and the client. But, again, that's not on the record. Now, in the state's brief, they cite to a number of cases that discuss when a confession is involuntary or voluntary. And each of those cases deal with a single factor. For example, there's cases that say that being intoxicated alone doesn't make something involuntary. There's also cases that note that being a juvenile alone without a concerned parent present doesn't make something involuntary. But none of those cases include the sort of cumulative effects that were going on here. This is not a case where Clifford was just tired or where he was, you know, without a parent but familiar with the criminal justice system or where he was barely intoxicated but there were no other factors or where he was undergoing medical procedures but nothing else was going on. This was a case where all of these were coming together at one time while these police officers were questioning him. And that is what makes this involuntary. Therefore, Clifford would ask that this be remanded for a new trial where this confession video is suppressed, Your Honors. The second issue that Clifford would like to discuss today is the Kyrgyzstan home invasion. Now, if you'll note from the record, the charges related to the Mainland Tish incident was filed on a single day. And multiple months later, the state comes back and files a charge against Clifford for two counts of home invasion and one of those the state has already conceded needs to be vacated. Now, for a juvenile to be tried in adult court, he or she has to meet what's known as the excluded jurisdiction. And the excluded jurisdiction provides that where juveniles are 15 years old or up and commit certain offenses, they're excluded from the juvenile jurisdiction. Otherwise, juveniles are presumed to be in the juvenile court unless that is waived and or they are transferred. Here, home invasion is not one of the four excluded charges. And therefore, when the state filed this charge, it had to be filed in the juvenile court. Was this briefed? Yes, it was. I'm sorry, Your Honor. It's in the supplemental brief. Okay. It's the first issue of the supplemental brief. Only charges that are part of the excluded charges, murder is certainly one of those, and crimes that arise out of the same incident can be brought in criminal court without either a transfer from the juvenile court or a waiver of jurisdiction. Here, neither of those occurred. Therefore, the trial court never had jurisdiction over the Krijeska home invasion. Now, certainly, what was the amount of time that occurred between the killing and the Krijeska? How do you say Krijeska? Krijeska, I believe, Your Honor. But I'm not sure. Okay. And between the knifing incident. It's actually from the record. There were some suggestions that it was a very short time. There was also some suggestions that Clifford went back home. There was a break, and then he went back out. It's unclear. Yeah, I found that very confusing. Let me ask you this. So the trial went forward on all these counts, including the knifing. I'm going to call it the night. Okay. What is the effect, if the court would find that there was no jurisdiction over the knifing incident, what is the effect of the double jeopardy provision of the Constitution on that? Well, if there's a servant who's already been found guilty, so we would believe that that should be vacated, Your Honor. Okay. But if it's vacated and sent back to the juvenile court, has jeopardy already attached such that he cannot be retried again? I'm not sure about that, Your Honor. If the court never had jurisdiction to start with, certainly it should be vacated, but if he has been tried and found guilty, then that would suggest that double jeopardy has applied. He was, you know, the jury had convened, and generally that's the standard for double jeopardy is that the jury has been called in and sworn in. But as I understand the statute, there would have been no subject matter jurisdiction if he's in the wrong court. I'm just asking. I mean, you're talking about subject matter jurisdiction? I agree, Your Honor, that there was no subject matter jurisdiction over Clifford Baker in the criminal court where this should have been brought in the juvenile court. However, first, we believe it should be vacated regardless of whether double jeopardy attaches or not. But again, the standard, and this was actually not briefed, but certainly we can file some case law on that if you would like more after the argument is complete. But generally the standard for double jeopardy is that once the jury has been sworn in, double jeopardy has attached. And here, the jury was sworn in and he was found guilty, so certain double jeopardy would most likely attach. But that's not clear. It's your argument, though, because the state's conceded it, that he has to be retried on the home invasion counts because you can't have, you have to figure out which one, oh, maybe just the sentencing. Just the sentencing, Your Honor. On the Mahon-Tish, which is the more serious crime. Well, yes. Which one of those is the more serious? That's going to be difficult. Yes. And I'm not sure that it will actually matter all that much. One of them will wind up being vacated and the other one will not. But that's only a sentencing. That's not a reversal, right? No, that's. A jury man for sentencing. Well, technically. I mean, that's what the state's conceded. I'm sorry? Isn't that what the state has conceded? Yes, that's exactly what the state has conceded. Clifford was actually convicted of three counts of home invasion, one for Mahon, one for Tish, and one for Krijeska. Mahon and Tish shared a home. It was a single dwelling. So he could be convicted of invading the home two times. He just invaded the home one. It's a one-act, one-crime issue. So that will actually be vacated, and he won't be resentenced on the second one. Just one of those will be vacated, and so it will not have any effect on his sentencing. He's actually being resentenced pursuant to Miller v. Alabama for all of it. So once everything has been vacated, he will have to be resentenced because he was given mandatory natural life, which, of course, is unconstitutional because he was only 15 years old. One of the ways that we know the Krijeska home invasion did not arise out of the same incident was because it took place at two different homes. There were also multiple weapons involved. It's not clear, but there was certainly a time difference that elapsed there between the two, and thus it's not the same incident. Now, that's not to say that the state could not have brought these charges in criminal court, but it would have been at the discretion of the juvenile judge, and here no discretion was exercised. The state essentially took that away from the juvenile court and filed it in the state court. Without a hearing. Without a hearing, that's right, without due process. And the U.S. Supreme Court has made clear that whether or not one is to waive jurisdiction or the rights be tried in juvenile court is a critical decision for juveniles, and that has to be made with the effective assistance of counsel, and here it just didn't occur. What is also striking, I think, about this case is that it's obvious that most of the people present didn't really understand how the juvenile court worked. The defense counsel realized there was a problem here, certainly, and he filed a motion to transfer back, right? Well, first off, it's impossible to transfer back. The trial court either had jurisdiction or it didn't. And then his suggestion was that, or he and the trial court sort of come up with this, if he's not found guilty of the murders, then we'll transfer back this home invasion. That might be something to consider post-trial. But the L.A. Supreme Court has said, look, you can't do that. Once you're in criminal court, you're in criminal court. So once the Progesta home invasion made its way to criminal court, assuming there was proper jurisdiction, and again, that's something that obviously Clifford can test, but you can't transfer back. That's an impossibility. So obviously both the defense counsel and the trial court were laboring under some misapprehensions of how the juvenile court system works generally, and the state was silent on most of these matters. Could you address the, and I know this wasn't something you wanted to do, but could you address the defense counsel's non-submission of the insanity or mental defense after putting on an expert? Absolutely, Your Honor. That's another, I would submit to you that this case is troubling in a number of ways, but that's another way that this case is troubling is that defense counsel waited kind of until the last few months before this presumably large trial is going to take place to bring up this idea that, hey, we're not just putting on involuntary intoxication as an affirmative defense. We're also going to put on the insanity defense. Just finish the briefing. Okay. And after, or during Vordeer, defense counsel talked about insanity. That was brought up during opening statements. We have this expert witness who testified that Clifford was not, was insane, and yet the trial counsel inexplicably failed to submit a jury instruction,  So you've set up the issue, you've provided expert testimony, and then you don't provide a way for a jury to make a finding. Okay. Thank you very much. Okay. Thank you. Whenever you're ready. Okay. May I please report, counsel? Jennifer Camden on behalf of the people. First, with regard to the voluntariness issue, I'd note that the defendant got an expert psychiatric opinion from Dr. Slomowicz on the issue of voluntariness. This was the defendant's expert. And the defendant's expert concluded that the statement was voluntary. That was her expert opinion. And, of course, she was well aware that he was on Cymalta and well aware of his diagnosis, his psychiatric diagnosis. The defendant mentions his IQ. It was in the low average range. And I note that his trouble at school stemmed from a diagnosed behavioral disorder, not a disorder in processing information. In fact, the defendant on the videotape responded that he did fine in school besides math. The defendant says that he has no prior criminal experience, but, of course, he'd been questioned in a hospital just two weeks before by a state trooper. He was also Mirandized three times before giving the statement at issue here. There were conflicting statements in the record about whether the self-inflicted shot two weeks before was actually a suicide attempt. I would note that the defendant said that there were no follow-up appointments given after his six days in the psychiatric treatment facility. But, in fact, he received treatment, a follow-up appointment on August 2nd, approximately 36 hours before the events of the early morning hours of August 4th. And I'd ask the court to just look at his demeanor on the video to determine whether these factors influenced, affected his voluntariness. Finding the voluntariness does contain the implied fact findings that his diagnosis and the effects of Cymbalta, for that matter, the other drugs that he'd ingested, were not so severe as to overbear his will that day. His blood alcohol level was 0.11 about an hour before the statement was given. Both of the police officers, well, two of the three police officers in the room testified that they didn't think he was impaired. The officers testified that they didn't smell alcohol. And as for the sleepiness, this doesn't render the statement necessarily admissible. He was catheterized at 6.15 and fell asleep. He was awakened about an hour later. The officer woke him up, introduced himself. There were a couple of preliminary questions. And then the officer asked the defendant whether he was awake enough to be questioned, whether he was awake enough to proceed. And the defendant affirmed that he was. The officer then, later in the interview, checked in again before he moved the camera closer, whether the defendant was too sleepy to proceed. And the defendant affirmed that he could proceed. And so he did. The defendant did not testify to the trial, right? He did not, Your Honor. And he talked to his attorney about that? I can't say what went on between them. With regards to the taser, the blood draw, the catheterization, all of these occurred at least one hour, and in the case of the taser, several hours before the interview, that there's no evidence that the defendant was in pain at the time of the interview. So for these reasons, the finding of voluntariness was not against the manifest weight of the evidence. I also want to note one other thing. The defendant in the reply where he says at pages five and seven that he was naked under the sheet that he was covered by, the tape shows that he was covered with a sheet up to his armpits. We don't know. I don't think the record shows what's under his sheet, so I just want to point that out. I don't think the record supports the assertion that he was naked. Ms. Camden, can you talk to us about this jurisdiction issue in the juvenile court? I was just about to, Your Honor. Thank you. And I do want to start with the state's two waiver arguments. This data search and the supplemental answer brief, two separate waiver arguments here. Would Your Honor prefer that I not address those first? Can you waive subject matter jurisdiction? Is that what we're talking about, subject matter jurisdiction of the juvenile court? I don't remember seeing that phrase in my reading on the subject, and certainly it is possible for a juvenile to waive the jurisdiction of the juvenile court and to proceed in the criminal court. But don't you have to start in the juvenile court and then waive it before a juvenile judge or have a hearing under the statute? The cases cited by the people include cases where, and I'm thinking I think specifically of the Green case, include cases where the charges were filed initially in the criminal court. Okay. Yeah. And what happened there? In these cases, charges were filed in the criminal court and the juvenile did not hear a hearing. We're courts of general jurisdiction, so I'd imagine that any judge could take a waiver, right? You talk to me in your terms. I just want to know what you think about whether this, as I call it, the knifing case, really should have been in the juvenile court or not. Right. Is it really the same incident? Well, the same incident issue doesn't necessarily arise here. Of course, people argue that it's waived under two different theories. Then people argue that under the plain language of the Juvenile Court Act, it actually doesn't matter whether it was the same incident because once the murder charges were filed against him, the juvenile court lost jurisdiction over him. But then the state does cite to a case, Toliver, in the supplemental answer brief, which states that it, which seems to suggest that what constitutes same incident for purposes of the automatic transfer provision is kind of a functional and practical matter. And in that case, there were murder charges and possession of drugs with intent to deliver. And the court held that it all arose out of the same incident defined as the gang's drug selling operation. But was the person caught with the drugs at the same time as the homicide? Did you say murder? That I can't say. Because here we have a time lapse. Two different homes. I mean, I'm just wondering what you think about this same incident issue. Yeah. Well, again, I think that the, there's not a lot of case law out there on either side of Toliver and LaSure, which seem to be the most rationally related cases on the issue. But I would just note that the state's second waiver issue really does indicate that this court, to decide this issue, doesn't have to get to the same incident question because the record shows that the defendant in this case didn't make age an issue below. The state cites Arnold, Gooden, Fox, Green, all of which indicate that a minor can waive his right to be tried as a juvenile. And he can do that in at least one of at least three ways, by either pleading guilty in criminal court, lying about his age, or if he fails to make age an issue, which is defined as specifically challenging the authority of the trial court to proceed against him. And so he does this. He makes age an issue by asserting his right to juvenile proceedings before trial. But his counsel did file something, albeit not the right title probably to the pleading, but his counsel did make age an issue. Well, Your Honor, I think that the defendant's argument is just the opposite. I think that the defendant's argument is that the title is the only thing that the defendant's attorney got right about that. He filed something that was titled a motion to transfer back to juvenile court. But, of course, titles don't count. We need to look at what the substance of the document says. And what the document says is that it's impossible to tell before trial whether these two incidents, the knifing incident and the murder incident, arose out of the same incident. And that, therefore, the question of whether the juvenile court has jurisdiction over the issue seven, sorry, count seven, should be decided after trial, after the facts are reduced to trial. It was the defendant's consistent position before trial that the defendant should be tried in criminal court on count seven. And the appellate court held in Arnold in 2001 that Illinois courts make an important distinction between cases in which a defendant promptly raises age as an issue before he's convicted and places great emphasis on the promptness of raising age as an issue. This has to be something that is raised before trial, and raising means to challenge the jurisdiction of the criminal court to try the count. In this case, the defense never requested trial in criminal court on count seven. At all times, they agreed to, affirmatively agreed to, or at least acquiesced in trial of count seven in the criminal court. And that's why the state is making two different waiver recommendations. First, based on doctrines of waiver and stop on invited error. And second, based on this more specialized juvenile court specific waiver argument under Arnold and Gooden. I hope that answers your- It does. Okay. I think your argument does. Thank you. I beg your pardon? Yes, it does. Thank you. I also want to respond to the defendant's argument that it was actually legally impossible for the court to transfer the matter to the juvenile court after trial. The defendant cites to King for that. In King, the court held that if the defendant was charged with excluded and non-excluded offenses that arose after the same incident, that the defendant should be sentenced in criminal court for the non-excluded offense, even if he's found not guilty of the excluded offense. The difference here is that in King, it was unquestioned that all offenses arose out of the same incident. But here, it was the defendant's position before trial that the same incident's issue could only be decided after trial. So if the defendant was found guilty only of the Progesta knifing, the court would, under the defendant's request, as stated in that motion to transfer back, would only consider that if he should be sentenced in juvenile court. And this procedure is more fully explained in the People's Supplemental Answer Brief at pages 23 through 25. But the short answer is that it was not impossible, is that what the defendant was seeking or said that he would be seeking in the event of certain contingencies based on what was due to the trial was not impossible at all. It was specifically provided for in the Juvenile Court Act. So you're saying that the defense counsel didn't know the law? No, no, not at all, Your Honor. The defense counsel was agreeing to trial in criminal court on count seven, but said that depending on what facts arose at trial, and depending also on whether he was convicted of only that charge, that sentencing might be proper in the juvenile court. The state also recited that understanding at a pretrial hearing, and the defense didn't challenge it. Well, isn't it true that you can determine whether the charge should be in juvenile court before the trial? And his position was you can't determine it until after the trial? That was the defense's position, yes. Yeah, but the law actually is very clear that you can determine it before trial. Well, let's say you're charged with murder, but then you're convicted of involuntary manslaughter. Involuntary manslaughter is not an automatic transfer offense, so then you have to be sentenced under the Juvenile Court Act, even though you were tried in adult court, right? Well, Your Honor, I think that depends on whether it arose out of the same incident. Well, I'm just saying that you just got one charge. You're charged with murder. A lesser-included offense instruction is given. You're convicted of lesser-included offense. It's not automatic transfer. Then you are sentenced then under the Juvenile Court Act. I've experienced that during my career. That's what happens. That's what happened under the old Transfer Act. Unless the state's attorney filed a motion for discretionary transfer in advance of the trial, because the burden for non-mandatory transfer is on the state's attorney to make a request, which could have been done here. There are certain statutory criteria to try the juvenile as an adult. That wasn't done here, though, either, right? No, but again, it's the state's decision that once he was charged in criminal court that the juvenile court lost jurisdiction over these other offenses. Well, it all boils down to the separate incident issue, doesn't it? Well, Your Honor, once he was charged in criminal court, then the rules of criminal procedure applied. Then if that were the case, then any juvenile charged with anything could just be charged in adult court, and then if he doesn't object or whatever, your argument would be he waived. And the court could go ahead and sentence him as an adult, whether he's 12 years old or whatever? Well, it's... I mean, either the juvenile court has jurisdiction over the case or they don't, right? Well, Green says that where a juvenile doesn't raise age as an issue, which, again, he has to do by affirmatively requesting a trial in the juvenile court, that he's waived that issue even where the charge should have been filed in the... That's what Green says? Green. It's a case called Green. Green. Green, G-R-E-N, cited in the people's supplemental answer brief. Okay. States that even where there's a mistake in where the charges get filed, And that's because the court doesn't want to reward sitting on one's rights. The court in Gooden said that the defendant didn't attempt to take advantage of the court by causing an undue expense and effort, and so found that there hadn't been a waiver here. But, again, if you look at what the defense did here, it at all times agreed to trial of count seven in the criminal court. I'd also argue that the defendant's proposed procedure, I mean, the defendant's proposed procedure here is that the state can only add count seven by filing a delinquency petition in the juvenile court and then petitioning to transfer it to the criminal court. But Section 5-130 states that the definition of a delinquent minor shall not apply to any juvenile who's subject to the automatic transfer statute. And the defendant cites no authority in mandating the procedure that he says is required by the Juvenile Court Act. Also, the act doesn't require the state to charge a defendant in juvenile court on counsel rising from the same comprehensive transaction as charges covered by the automatic transfer statute. That gets back to my permissive joinder argument, which is that once the defendant was charged in criminal court with the Manitish murders and home invasions, that the state then could join any charges to it that would fit under the permissive joinder statute, as the Krojewska home invasion did. I mean, if the defendant's proposed procedure is required by the Juvenile Court Act, it's notable that the Juvenile Court, considering transfer under Section 5-805 of the act, isn't directed to consider whether the charge at issue arises from the same comprehensive transaction as any charges giving rise to other charges against that same juvenile that are pending in criminal court. I think it's because the Juvenile Court Act doesn't contemplate that juvenile transfer proceedings will occur after the automatic transfer of other charges. I'll stand on the answer briefs in this case. And what's the purpose for rebuttal? Thank you, Mr. Campbell. Rebuttal? Your Honors, I would like to start with the waiver argument and counsel's statement that we cite to no authority that would require this to be filed in juvenile court. Under the excluded jurisdiction, certainly the Mahon Tish should have been filed in criminal court because it was a murder charge. But that statute makes it clear that it can only be filed in criminal court, other charges that are not excluded, if it arises out of the same incident. So again, Your Honors, this all hinges on the question of whether or not the Krojewska home invasion arose out of the same incident. And there isn't really any case law. It, at this point, has not really been interpreted what that language means, Your Honors. I would also like to address the waiver argument. She notes that there are a number of cases that say that this was waived where Clifford didn't make age an issue. But in each of those cases, there were special circumstances. For example, in the Green or Grieve case, I'm sure, age didn't become an issue until after he'd been found guilty. There are other cases. He pled guilty as well. Right. In that case, I believe. In Green? Is that right? There were two cases, and there was Grieve in Green, and I'm not sure which one she was referring to. But in particular, there was one case that the issue wasn't brought up until after the jury had reached a verdict. In another case, the defendant never made age an issue. And the appellate court concluded by saying, hey, look, we still don't know if this person was a juvenile. There was yet another case where the defendant actually lied about his age and purposefully tricked the court regarding his age. And the appellate court said, look, that's a waiver. When you purposefully mislead the court and say you're an adult when you're actually a juvenile, you waive that issue. That's not what happened here, Your Honors. The court was well aware that this was a 15-year-old. And counsel, however inartfully his motion may have been worded, was suggesting that the trial court had no jurisdiction over the Kujeska home invasion. And finally, Your Honors, waiver is intentional relinquishment of a known right. And particularly when we're talking about juvenile jurisdiction, the courts note that it must be made with effective assistance of counsel. Here, there's no known waiver where Clifford says, look, I understand this could be trialed in juvenile court, and I waive that. It just didn't exist here. Nor is there anything in the record to suggest that Clifford was trying to trick the court into thinking that he was in fact an adult and only bring it up later when it could benefit him. All along, the court was aware of his age, and the court should have been aware of the Juvenile Court Act and that it had jurisdiction. As to the confession and the voluntariness, the state noted that the defendant's expert said that this confession was voluntary. This is the same expert that later at the trial actually revised her opinion to go on and say that Clifford was both involuntarily intoxicated and also insane. He was not able to appreciate the criminality of his conduct at the time. It's also noted both by the state and the trial court that Clifford was Miranda-ized three times. But your honors, if he didn't understand Miranda warnings, it doesn't matter how many times you tell him those warnings. Either he was mentally, physically, intellectually capable of understanding those warnings or he was not. But it doesn't matter how many times you tell a warning to someone who doesn't understand it. If they don't understand it, they don't understand it. In fact, the repetition of those warnings when someone doesn't understand it is probably more likely to make them eventually say, I agree, rather than to actually illustrate that this individual understood his Miranda warnings. And finally, the state just noted that there was a follow-up appointment following or after he was released from the hospital and prior to this incident. But it's important to note that his parents testified there was an appointment, but Clifford never made it to that appointment. Again, he was a 15-year-old kid with parents who didn't make sure he was followed up with the doctors. And he had doctors who didn't follow up either. So essentially you have a 15-year-old child who's been diagnosed with mental health issues that's being given medication that is not meant for this particular age bracket unless he's being closely monitored by a doctor. And that simply didn't occur in this case. And finally, my last point that I would like to make is that the state noted that during this video, the police asked, we checked in with Clifford, are you awake? Are you able to follow us? They had to do that because Clifford kept falling asleep. And especially in the beginning of the video, the police have to continue to say, are you with us? Are you able to understand? Are you here? And as the officers noted in their own testimony, he kept fading in and out of consciousness. So of course you have to continually check to see if he's with you because he keeps fading in and out of consciousness, Your Honor. Thank you. Thank you, ladies. Okay, this case will be taken under advisement and disposition unless you're in due course. Court is adjourned. All rise.